37280.   WEST END CAB CO., INC. *v.* STOVALL.

DECIDED NOVEMBER 14, 1958—REHEARING DENIED DECEMBER 1, 1958.

726

*Ralph Spain, A. Walton Nall, Nall, Sterne, Miller, Cadenhead & Dennis,* for plaintiff in error.

*Calhoun & Calhoun, Walter W. Calhoun,* contra.

QUILLIAN, Judge. If the evidence showed that the relationship between Jackson and the West End Cab Company, Inc., was that of master and servant there can be no question that the rule laid down in *Yellow Cab Co.* v. *Nelson,* 35 *Ga. App.* 694 (1) (134 S. E. 822) is applicable to the facts of this case. In that case it was held: "Where it is shown, by evidence, that an automobile was operated upon the public street in the usual way, and was at that time in the possession and control of the owner's servant, the jury may infer that the servant was using it in the prosecution of the owner's business and within the scope of the servant's employment."

*Fidelity & Cas. Co. of N. Y.* v. *Windham,* 209 *Ga.* 592 (74 S. E. 2d 835) is a workmen's compensation case, and 'while it deals with the question as to who is an employer within the meaning of the Workmen's Compensation Act and the definition of Code (Ann.) § 114-101, it also holds that under the peculiar facts of that case the relationship of master and servant did not exist. The case turned upon the decision that one who rents a cab from a taxicab company at a stipulated price, with the understanding that the company will radio messages as to the location where prospective passengers may be found and furnished transportation does not create the relationship of master

and servant. It is pointed out that under such arrangement the taxicab company has no supervision "over the method, time and manner in which the claimant operated the cab." The case in effect places the claimant in the category of an independent contractor.

The facts upon which the decision there was made were diametrically opposite from those of the case we now review. There the driver was not subject to the orders of the taxicab company; here the undisputed evidence is that he worked under the supervision and control of the company. Hence *Fidelity & Cas. Co. of N. Y.* v. *Windham,* 209 *Ga.* 592, supra, is, in a negative way, authority for holding that the driver, Jackson, did not bear the relationship of an independent contractor to the defendant. However, no question as to whether Jackson, the driver, was an independent contractor is involved in this case. Whether under the facts revealed by the record he sustained the relationship of a servant to West End Cab Company, Inc., he operated the cab he drove under the license of the corporation and hence, under the holding of *Aetna Cas. &c. Co.* v. *Prather,* 59 *Ga. App.* 797 (2 S. E. 2d 115), could not be an independent contractor. The evidence that Jackson did operate under the West End Cab Company, Inc., license is meager, but conclusive of that fact.

The taxi company's bookkeeper testified: that Jackson's name did not appear on his records as working the day of the collision, but he could not remember whether or not Jackson was working that day. The witness further admitted that he did not know whether he was on that particular day keeping the defendant's books or was otherwise engaged.

Neither the instant case nor *Aetna Cas. &c. Co.* v. *Prather,* 59 *Ga. App.* 797, supra, is as clear as *Diamond Cab Co.* v. *Adams,* 91 *Ga. App.* 220, 221 (85 S. E. 2d 451), in which the court held that a regulatory ordinance of Atlanta provided that no taxicab "shall be operated by any person other than the owner, or his duly licensed employee."

However, the driver Jackson was according to the testimony of W. F. Jones, president, an employee of the corporation engaged to operate the vehicle involved in the collision which

resulted in injuries to the plaintiff, and according to all of the testimony regarding his relationship to the taxicab company, he drove the vehicle under the supervision and control of the corporation.

In 35 Am. Jur. 445, § 3 is the text: "the really essential element of the relationship is the right of control—the right of one person, the master, to order and control another, the servant, in the performance of work by the latter, and the right to direct the manner in which the work shall be done."

As held in *J. W. Starr & Sons Lumber Co.* v. *York*, 89 *Ga. App.* 22, 28 (78 S. E. 2d 429) this court's concept of employment that brings into existence the relationship of master and servant "inherently involves orders and control."

No wages were to be received by Jackson and under the holding in *Fidelity & Cas. Co. of N. Y.* v. *Windham*, 209 *Ga.* 592, supra, he was not an employee of the taxi company within the meaning of the workmen's compensation law, but the contract as shown by the evidence adduced upon the trial showed that Jackson was to receive compensation for his labor. "Payment of wages, although not necessary to render one a master, is necessary to bring one within the workmen's compensation act, which contemplates that compensation shall be fixed in proportion to the employee's wages as applied to the particular injury." *Georgia Ry. & Power Co.* v. *Middlebrooks*, 34 *Ga. App.* 156 (128 S. E. 777).

"While the contract of service or employment must be supported by a lawful consideration, it is not essential that there be a promise for payment of wages. Although no compensation is paid, the relation of master and servant may yet exist. Hence, the employer may be held liable for the employee's wrongful act, notwithstanding the employee was serving without pay. And so, two or more employers may be held jointly and severally liable for the acts of their employee, although the latter's wages are paid by one of them." 35 Am. Jur. 453, § 12.

In determining whether a contract is to be construed so as to accomplish a given purpose or to establish a particular relationship, the intention of the parties to the contract should under Code § 20-702 be given consideration. If there is no legal im-

pediment, the contract should be construed to accomplish the purpose and to create the relationship contemplated by the parties.

We think there was evidence that the relationship of master and servant existed between the defendant and Jackson. Hence *Yellow Cab Co.* v. *Nelson,* 35 *Ga. App.* 694, supra, and similar holdings apply to the facts of the case sub judice.

We do not think it important in determining whether the principle pronounced in *Yellow Cab Co.* v. *Nelson,* supra, and similar holdings, that the relationship of master and servant between the driver Jackson and the defendant should have been proved, or as for that matter, any other precisely definable legal relationship or connection.

The elements of proof that raise the presumption that Jackson was, on the occasion of the collision, driving the cab in the prosecution of the defendant's business and within the scope of authority vested in him by the defendant as its servant or agent, or that, by the terms of the contract between the defendant corporation and Jackson, the automobile was to be used in carrying on the defendant's business, are that, while being so used under the authority of the corporation's license, it was being operated under the defendant's supervision and control, and actually had on it the defendant's trade name.

Where a taxicab bearing the name or markings of a common carrier is customarily operated in carrying on the carrier's business and when so operated is being driven by one who is subject to the supervision and control of the carrier traverses the public streets and thoroughfares, the presumption arises that the driver is acting within the scope of his authority and in the prosecution of the carrier's business. Especially is this true when the cab is driven under the authority of the carrier's license.

It makes no difference that the driver has an interest, other than wages, in the profits earned through the operation of the cab. So long as it is shown that the carrier derives profit or income from the cab, which bears its name, and is driven under its supervision and control, the rule holds good, the presumption

is that the carrier is responsible for the negligence of the cab's driver.

The presumption is rebuttable, and the defendant insists that it was rebutted in this case by evidence that showed that on the day of the collision Jackson was not driving the cab in the defendant's service or for its benefit. With this contention we do not agree. The defendant's bookkeeper testified that his books did not show that Jackson was driving on the day the collision occurred, but he admitted that he could not swear that he was keeping the books on that particular day, or that at the hour the collision happened the information as to whether Jackson was driving would have normally been entered upon the defendant's books.

*Judgment affirmed. Nichols, J., concurs. Felton, C. J., concurs in the judgment.*