90 N.J. Super. 135 (1966)
216 A.2d 413
EVA NASEEF, PETITIONER-APPELLANT,
v.
CORD, INC., AND 20TH CENTURY TAXICAB ASSOCIATION, RESPONDENTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 25, 1965.
Decided January 18, 1966.
*137 Before Judges GAULKIN, LABRECQUE and BROWN.
Mr. Bernard I. Kramer argued the cause for petitioner.
Mr. Charles Handler argued the cause for respondents (Mr. Samuel H. Berlin, of counsel and on the brief).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
Petitioner's husband Michael died as a result of injuries sustained while he was operating a taxicab owned by Cord, Inc., a member of the 20th Century Taxicab Association. She was awarded workmen's compensation in the Division against both respondents. However, the County Court reversed and she appeals. We affirm the dismissal as against 20th Century Taxicab Association but we reverse the dismissal as against Cord, Inc.
Decedent entered into a written contract with Cord, the essential provisions of which are as follows:
"1. In consideration of the covenants and agreements hereinafter contained, the Owner does hereby lease and rent to the Lessee his Taxicab No. 160 for the conveying, transporting and carrying all persons in and about the streets of the City of Newark, New Jersey, together with the fares, charges and profits of said taxicab at a Daily rental of $10.00.
*138 2. The Lessee hereby covenants and agrees that he will pay the rent herein provided in advance on or before the commencement of each rental period; that he will not transfer, assign, sell or sublet this lease without the consent in writing of the Owner; that he will not suffer any act to be done which may cause a forfeiture of the franchise, permit or license of said taxicab, and that he is not accountable for the fares collected, nor subject to the control and direction of the Owner, except that he will operate the taxicab in accordance with the rules and regulations of the Newark Twentieth Century Taxicab Association and the ordinance of the City of Newark, New Jersey.
3. The Lessee hereby covenants and agrees not to employ any person to drive or operate the said taxicab leased to the Lessee; it being specifically understood that the Lessee is an independent contractor and is so considered herein.

* * * * * * * *
7. The Lessee agrees to and hereby assumes exclusive liability for the payment of any and all taxes imposed by the Federal Social Security Act and/or the New Jersey State Unemployment Insurance Law, and any and all Federal income taxes, State and Municipal taxes; to make and complete such records and reports as shall be required under the said laws and regulations; that if the Owner be called upon to pay the taxes, charges and penalties under said laws, then the Lessee is to immediately reimburse the Owner for the amount so paid.
8. The parties further agree that the provisions of Article II, Chapter 15, Revised Statutes of New Jersey 34:15-7 et seq., commonly known as the Workmen's Compensation Act, shall not apply to either of them or this contract."
Were it not for paragraph 8 of this contract, petitioner's right to compensation could not be questioned. Hannigan v. Goldfarb, 53 N.J. Super. 190 (App. Div. 1958). However, Cord contends that said paragraph 8 freed it of the obligation to pay workmen's compensation. The contract was entered into after Hannigan and it is admitted that paragraph 8 was inserted to avoid the effect of that case.
As we construe the opinion of the Judge of Compensation, it appears he held that paragraph 8 was not effective to bar compensation because it was too broad. He reasoned, in effect, that since, under Hannigan, Naseef was an employee within the purview of the Workmen's Compensation Act, he could not waive all of the benefits of the act but only the benefits under Article II; that it was Cord's duty to make it plain to Naseef that he still retained his rights under Article I, which the contract did not do; instead the contract in general and *139 paragraph 8 in particular were designed by Cord to mislead Naseef into believing that he was an independent contractor and that no part of the Workmen's Compensation Act applied to him; and that therefore Naseef did not waive the benefits of the act since an employee cannot make an intelligent choice to waive workmen's compensation benefits when he is told that he is not an employee. For the same reasons, if paragraph 8 is to be treated not as a waiver by Naseef but as unilateral notice by Cord that it elicited not to be bound by Article II, the notice was too ambiguous, involved, and lacking in the clarity required of such a notice. To be effective the notice must be clear and unambiguous. See John Hancock Mutual Life Ins. Co. v. Lieb, 11 N.J. Misc. 316, 165 A. 720 (Sup. Ct. 1933), affirmed o.b. 113 N.J.L. 34 (E. & A. 1934); Britten v. Berger, 18 N.J. Misc. 215, 12 A.2d 875 (Dept. Labor 1940). Cf. Portage Shoe Mfg. Co. v. Reich, 53 N.J. Super. 600, 605 (App. Div. 1959). For example, the notice purports to reject what is "commonly known as the Workmen's Compensation Act."
The County Court refused to follow the reasoning of the judge of compensation. It held that paragraph 8 was effective insofar as Cord was concerned. There may be merit in the views expressed by the judge of compensation, which the petitioner presses us to accept, but we find it unnecessary to do so because we agree with petitioner that the entire contract is invalid, and that that invalidity makes paragraph 8 unenforceable.
The contract is invalid because it violates an ordinance of the City of Newark regulating taxicabs. Section 31.21 of that ordinance provides:
"It shall be unlawful for the owner of any taxicab to hire out or rent such taxicab to a taxicab driver or any other person for use within the City for a stipulated sum over a definite period of time."
Violation of the ordinance is punishable, under section 31.44, by a fine of up to $200 or by imprisonment in the County *140 Jail not exceeding 90 days, or both, as well as by the suspension or revocation of the license.
The statutory authority for this ordinance is found in R.S. 48:16-1 to 12, as amended, and N.J.S.A. 40:52-1(a), (b). R.S. 48:16-2 provides:
"No autocab shall be operated along any street in any municipality until the owner thereof shall obtain the consent of the elective governing body or member thereof having control of the public streets in the municipality."
R.S. 48:16-10 provides:
"A consent granted under section 48:16-2 of this title may be revoked by the governing body of the municipality granting the same, after notice and hearing, whenever it shall appear that the person to whom the consent was granted has failed * * * to comply with any terms or conditions imposed by the board or body granting the consent * * *."
R.S. 48:16-12 provides that operation of a taxicab in violation of the statute is a misdemeanor.
The right to operate a taxicab is a franchise. The State doubtless has the right to control the issuance of taxicab franchises and to regulate the conduct and the duties of the holders thereof. However, the State has elected to delegate that power to the municipalities, and the ordinance in question is an exercise by Newark of that delegated sovereign power. Even in the absence of express provision, it is an implied condition of every grant of a public utility franchise that the grantee itself shall exercise it. Without the permission of the grantor, the grantee has no right to sell, rent or assign the franchise or delegate its duties or otherwise to dilute or diminish his responsibility, or interpose anyone or anythng between himself and his duty to the public. That is the plain and indisputably commendable purpose of the City of Newark in enacting said section 31.21. The regulations of the Interstate Commerce Commission apparently contain provisions similar to section 31.21. See Wilson v. Kelleher Motor Freight Lines, Inc., 12 N.J. 261, 265-6 (1953).
*141 In Diamond Cab Co. v. Adams, 91 Ga. App. 220, 85 S.E.2d 451 (Ct. App. 1954), it appeared that Atlanta had an ordinance similar to Newark's. The Diamond Cab Company refused to pay workmen's compensation for the death of one of its "lessees," but the court held:
"Diamond Cab Company, having obtained a permit to operate taxicabs upon the streets of Atlanta, was bound to operate taxicabs in compliance with that city's regulatory ordinances, including an ordinance that no taxicabs `shall be operated by any person other than the owner, or his duly licensed employee,' and cannot delegate its duties as an operating company to its drivers, by an arrangement of leasing its taxicabs to drivers as independent contractors rather than as employees, in order to avoid liability under the Workmen's Compensation Act for death or injury to its drivers. See Aetna Casualty & Surety Co. v. Prather, 59 Ga. App. 797, 2 S.E.2d 115."
The special duties and the high degree of care which a common carrier owes to its passengers are too well known to require listing. The carriage of passengers by taxicabs is in an essentially sensitive area because of the privacy of the vehicle and the passenger's total dependency not only on the driver's skill but upon his protection as well. The municipality has the unquestionable right to see to it that the responsibility of the owner to the passengers and the public, financial and otherwise, shall not be diluted. N.J.S.A. 48:16-3 requires the owner to carry public liability insurance in only the sums of $10,000-$20,000 for personal injuries and $5,000 for property damage  very small sums in this day and age. If an owner could escape personal liability by renting, those injured would be limited in their recovery to the amount of the insurance plus the usually trifling assets of the taxicab driver. Mason v. Niewinski, 66 N.J. Super. 358 (App. Div. 1961), in which the illegality of the "lease" was not raised, is an example of such dilution.
It has also been suggested that such provisions are intended to protect those who are hired to drive taxicabs. Malone v. Gary, 98 Ga. App. 699, 106 S.E.2d 320 (Ct. App. 1958). However, we doubt that that was the intention of the City of Newark.
*142 Cord does not deny that the contract plainly violates the ordinance. However, it argues that (1) Newark has not seen fit to enforce its own ordinance, and petitioner has no standing to raise the question; and (2) even if the balance of the contract is void, paragraph 8 is severable and valid.
If we were to enforce this contract, we would be aiding and abetting the violation of the ordinance. It is a rule of general application that any bargain is illegal if its formation or performance is prohibited by statute, and it will not be enforced in the courts. Samuel D. Wasserman, Inc. v. Klahre, 24 N.J. Super. 143, 148 (App. Div. 1952); Lehigh Valley R. Co. v. United Lead Co., 102 N.J.L. 545 (Sup. Ct. 1926); Restatement, Contracts, § 580 (1932). It seems to us that the same rule applies to municipal ordinances, especially where, as here, the ordinance is passed by the municipality in the exercise of an authority expressly delegated to it by the State. Pro tanto, Newark was exercising the State's sovereignty, and we see no reason why we should aid in the violation of this ordinance any more than we would assist in the violation of a statute. Cf. Pratico v. Rhodes, 17 N.J. 328, 332 (1955).
Violations of ordinances have been equated with those of statutes in other jurisdictions. Thus, in Herman v. Mayor, etc., of Baltimore, 189 Md. 191, 55 A.2d 491, 494, 173 A.L.R. 1310 (Ct. App. 1947), the court stated:
"It is a general principle that an ordinance passed in pursuance of express legislative authority is a law within the meaning of the Constitution, and has the same effect as a local law duly enacted by the Legislature."
In Zeitz v. Foley, 264 S.W.2d 267, 268 (Ky. Ct. App. 1954), the principle applicable to this case was aptly stated:
"If it clearly appears that a contract has as its direct object and purpose a violation of the Federal or state constitution, Federal or state statutes, some ordinance of a city or town, or some rule of the common law, courts will not lend their aid to its enforcement."
*143 See also Vick v. Patterson, 158 Cal. App.2d 414, 322 P.2d 548 (D. Ct. App. 1958); Wechsler v. Novak, 157 Fla. 703, 26 So.2d 884, 887 (Sup. Ct. 1946).
In City of Chicago v. Dorband, 297 Ill. App. 617, 18 N.E.2d 107 (App. Ct. 1938), a situation strikingly similar to the one at bar was present. The owner of a taxicab was convicted for violating an ordinance of the City of Chicago in that his cab operated within the city limits without the required license. In discussing the effect of a contract of carriage made by a passenger and the owner of an unlicensed taxicab the court stated:
"Municipal ordinances are binding on all persons within the territorial jurisdiction of the city in and for which they are enacted and since * * * the foregoing ordinances are in effect in the City of Chicago regulating and licensing taxicabs, owners of such subject themselves to the provisions of said ordinances if they use their taxicabs for the transportation of passengers for hire within the limits of said city. It goes without saying that a contract of the nature indicated is invalid in its inception since its very purpose is illegal in that it contemplates the violation of valid ordinances of the City of Chicago." (18 N.E.2d, at pp. 110-111)
Thus, there is ample authority for the proposition that this contract is illegal and void. See also 17 Am. Jur.2d, Contracts § 165; 17 C.J.S. Contracts § 208.
Cord argues that, even so, paragraph 8 is severable and must be enforced. It is true that if a contract contains an illegal provision, if such provision is severable the courts will enforce the remainder of the contract after excising the illegal portion. Mannion v. Greenbrook Hotel, Inc., 138 N.J. Eq. 518 (E. & A. 1946); Jones v. Gabrielan, 52 N.J. Super. 563, 572 (App. Div. 1958). However, to enforce the valid provisions the illegal ones must in fact be severable. Bauer v. City of Newark, 7 N.J. 426, 435 (1951). It follows that if the illegal provision is not severable, the entire contract is invalid and unenforceable. Stack v. P.G. Garage, Inc., 7 N.J. 118 (1951).
*144 The entire contract was for the rental of the taxicab by Naseef as a lessee and an independent contractor. Paragraph 8 of the agreement to waive cannot be considered in vacuo. It was part and parcel of, and integral to, the other provisions of the contract. Thus, we hold that it is not severable. The entire contract, being indivisible, was tainted with illegality, and hence must fall.
As to the 20th Century Taxicab Association, we agree with the County Court that the Association was not an employer of Naseef.
For the foregoing reasons, the judgment in favor of Cord, Inc. is reversed and the award of the Division of Workmen's Compensation is reinstated, but payable by Cord, Inc. alone. The judgment in favor of 20th Century Taxicab Association is affirmed. Costs against Cord, Inc.